**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **CANDY KELLY, an individual,**<br><br>**Plaintiffs**,<br><br>**v.**<br><br>**QUALITEST PHARMACEUTICALS, INC., a domestic corporation, and DOES 1-10, inclusive,**<br><br>**Defendants**. | **CIV- F-06-116 AWI LJO**<br><br>**ORDER ON DEFENDANT'S RULE 12 MOTIONS AND TRANSFERRING CASE TO THE FEDERAL NORTHERN DISTRICT OF ALABAMA, NORTHEASTERN DIVISION** |

This case stems from the tragic dual suicide of a mother (Leisa Kelly) and son (Ryan Kelly) after they obtained an anti-depressant, Elavil, from an on-line pharmacy. Plaintiff Candy Kelly ("Plaintiff") was Leisa' mother and Ryan's grandmother. In 2005, Plaintiff brought suit in this Court[1] against Qualitest Pharmaceuticals ("Defendant"), Dr. Everett Echols, Tom Chapman, EZ RX, RX Medical Services, and Frank and Amanda Hernandez. On August 30, 2005, this Court granted Qualitest Pharmaceutical's motion to dismiss and dismissed Qualitest because of improper venue. See Court's Docket of Case Number CV F 05-0118 AWI SMS at Document No. 32. After the 2005 partial dismissal, Plaintiff filed suit against Defendant in the Superior Court of Calaveras County and alleged state law claims for negligence and emotional distress; these claims are practically identical to the claims made in *Kelly 1*. Defendant removed to this

[1]The Court will refer to the prior suit, CV F 05-118 AWI SMS, as "*Kelly 1*."

Court and now moves to dismiss due to improper venue, failure to state a claim, and lack of standing, and also moves to strike various portions of the complaint. For the reasons that follow, the Court will grant Defendant' s motion in part and will transfer this case to the Northern District of Alabama.

**FACTS**

According to Plaintiff's complaint, Leisa and Ryan Kelly were both residents of California and under the care of a California licensed physician at all relevant times. Leisa and Ryan were being professionally treated for depression and their physician carefully monitored their intake of psychotherapeutic drugs, never allowing them to obtain the drugs in lethal doses.

On January 21 2004, either Leisa in her own name or Ryan using his mother's name (most likely the latter) accessed the RX Medical website and requested 90-150 mg tablets of Elavil (amitriptyline). Elavil is manufactured by Defendant Qualitest, an Alabama corporation doing business in Alabama. In the questionnaire used to request the Elavil, it was asked, "What is the medical condition that you are requesting this medication for?" The answer given by either Leisa or Ryan was "severe depression." No physician employed by RX Medical examined Leisa or Ryan prior to authorizing the prescription and no prior physician-patient relationship existed.

On January 31, 2004, Leisa and Ryan used the Elavil to commit suicide in Calaveras County, California. When the California authorities discovered the bodies of Leisa and Ryan, they also found an empty bottle of Elavil which indicated that the bottle contained 90-150 mg tablets of Elavil and that the prescription had been authorized by RX Medical. The autopsy report indicated that both Leisa and Ryan had died from "amitriptyline toxicity inducing suicide." Leisa's physician has indicated that, in her condition, Leisa should never have been prescribed amitriptyline by anyone.

Physicians employed by RX Medical review on-line questionnaires submitted by individuals to RX Medical. Individuals such as Leisa and Ryan access a website operated and maintained by RX Medical and complete an on-line questionnaire in order to obtain specific

prescription drugs. Employees of RX Medical reviewed the questionnaires and, based upon their review, authorize a prescription for the individual for the drug sought. The prescription is then transmitted electronically to the on-line pharmacy associated with RX Medical, in this case EZ RX, which then fills the prescription and ships the prescription drugs to the individual who requested the drugs in whatever quantity requested in the on-line questionnaire.

On-line pharmacies, such as EZ RX, are able to purchase virtually unlimited supplies of controlled substances from manufacturers such as Defendant, which employ specific distributors to market the manufacturer's products. The distributors, with the authority of the manufacturer, allow drugs which are governmentally regulated because of the dangers the drugs present if improperly used, to enter the stream of commerce unrestrained. Defendant's products were sold to EZ RX in unlimited amounts without requiring EZ RX to demonstrate that its distribution of the substances was according to law.

Plaintiff alleges that Defendant was negligent in the sales, distribution, and control of the dangerous and controlled substance Elavil. Specifically, Plaintiff alleges that Defendant approved the sale of Elavil to on-line "rogue" pharmacies without reasonable investigation into the business practices of the pharmacy in that Defendant's distributors did not require proof of proper licensing of the business, its pharmacists or physicians, or proof of insurance coverage for negligence. Based on Plaintiff's belief, Plaintiff alleges that Qualitest knew that controlled substances were being sold by the "rogue" on-line pharmacies for "other than legitimate medical purposes;" this violated of California Health and Safety Code § 11153.5.

## QUALITEST'S MOTION[2]

### 1. Standing of Candy Kelly

*Defendant's Argument*

---

[2]Defendant has filed a motion for judicial notice and requests that this Court take judicial notice of Plaintiff's complaint from her case, CV F 05-118 AWI SMS. There is no objection, and the Court may take judicial notice of its own records. See 201; United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). Defendant's motion is granted.

Defendant argues that California Code of Civil Procedure § 377.60 in tandem with Probate Code § 6402 establish who has standing under the wrongful death statute. Defendant argues that these statutes establish three categories of persons with standing: (1) surviving spouse or partner and children (or if none, the children's issue); or (2) if no surviving children, then persons entitled to the decedent's property through intestate succession {successively: (a) issue of decedent, or if none; (b) decedent's parents, or if none; (c) issue of decedent's parents, or if none; (d) to grandparents}; or (3) a putative spouse, children of the putative spouse, stepchildren, or dependent parents.

Defendant argues that Plaintiff has merely alleged that she is the mother of Leisa and the grandmother of Ryan. The complaint does not mention whether Leisa has surviving issue and does not mention whether Ryan has or does not have surviving issue, siblings, a father, or a spouse. Because Plaintiff has not alleged that those "higher up" than her on the intestate succession ladder do not exist, she has failed to show to properly allege standing.

*Plaintiffs' Opposition*

Plaintiff argues that she has alleged that she is the heir of Leisa and Ryan and has submitted a declaration in support of her assertion. The declaration states that Plaintiff is the mother of Leisa and grandmother of Ryan, that Leisa and Ryan had no spouses or surviving children, and that the identity and whereabouts of Ryan's father is unknown. The motion should be denied or amendment should be permitted.

*Defendant's Reply*

Defendant argues that the Court should not consider Plaintiff's declaration and that review is limited to the complaint and judicially noticeable facts. However, if the declaration is considered, the declaration establishes that Plaintiff does not have standing to bring a wrongful death suit for the death of Ryan. The declaration merely states that Ryan's father's location is unknown, it does not show that Ryan's father is deceased.

*Standing Under The California Wrongful Death Act*

In California, the cause of action for wrongful death is "a pure creature of the statute" and "'exists only so far and in favor of such person as the legislative power may declare.'" Justus v. Atchison, 19 Cal.3d 564, 575 (1977); Rosales v. Battle, 113 Cal.App.4th 1178, 1182 (2003); Chavez v. Carpenter, 91 Cal.App.4th 1433, 1438-1440 (2001); Fraizer v. Velkura, 91 Cal.App.4th 942, 945 (2001). Standing to sue is governed by California Code of Civil Procedure § 377.60, and the category of persons eligible to bring wrongful death actions is strictly construed. Cal. Code Civ. Pro. § 377.60; Steed v. Imperial Airlines, 12 Cal.3d 115, 119-20 (1974); Bouley v. Long Beach Memorial Medical Center, 127 Cal.App.4th 601, 606 (2005); Chavez, 91 Cal.App.4th at 1438; Fraizer, 91 Cal.App.4th at 945; Marks v. Lyerla, 1 Cal. App. 4th 556, 559-60 (1991). The legislative determination as to how far to extend a statutorily created right of action "is conclusive, unless it appears beyond rational doubt that an arbitrary discrimination between persons or classes similarly situated has been made without any reasonable cause therefor." Justus, 19 Cal.3d at 581; Holguin v. Flores, 122 Cal.App.4th 428, 437-38 (2004).

Section 377.60 establishes the wrongful death cause of action and delineates who may avail themselves of the action. In relevant part, it reads:

> A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:
>
> (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.
>
> (b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

Cal. Code Civ. Pro. § 377.60.

Probate Code § 6402 sets the order of intestate succession under § 377.60. See Chavez, 91 Cal.App.4th at 1440; Frazier, 91 Cal.App.4th at 946. When there is no surviving spouse or

domestic partner, § 6402, in relevant part, provides the following succession:

> (a) To the issue of the decedent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
>
> (b) If there is no surviving issue, to the decedent's parent or parents equally.
>
> (c) If there is no surviving issue or parent, to the issue of the parents or either of them, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.
>
> (d) If there is no surviving issue, parent or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, to the grandparent or grandparents equally, or to the issue of those grandparents if there is no surviving grandparent, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take in the manner provided in Section 240.

Cal. Prob. Code § 6402(a)-(d). A plaintiff who brings a wrongful death suit as an heir must establish the absence of issue by the decedent and the entitlement or propriety of the heir to seek recovery under § 377.60, i.e. that the heir actually has standing under § 377.60. See Nelson v. County of Los Angeles, 113 Cal.App.4th 783, 789 (2004); Coats v. K-Mart Corp., 215 Cal.App.3d 961, 969-70 (1989); Jolley v. Clemens, 28 Cal.App.2d 55, 74-75 (1938).

**a. Standing For The Alleged Wrongful Death Of Leisa Kelly**

The Supreme Court has addressed the determination of standing through a motion to dismiss. The Supreme Court has explained:

> For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. E.g., Jenkins v. McKeithen, 395 U.S. 411, 421-422 (1969). *At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact* deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

Warth v. Seldin, 422 U.S. 490, 501-02 (U.S. 1975) (emphasis added); see also Communities for a Great Northwest v. Clinton, 112 F.Supp.2d 29, 32-33 (D. D.C. 2000); National Coalition Gov't of Burma v. Unocal, Inc., 176 F.R.D. 329, 337-38 (C.D. Cal. 1997); Reese v. United States, 930

F. Supp. 1537, 1539-40 (S.D. Ga. 1995); Alabama Freethought Ass'n v. Moore, 893 F.Supp. 1522, 1531 n.19 (M.D. Ala. 1995).

A parent is not the "surviving spouse, domestic partner, children, [or] issue of deceased children." See Cal. Code Civ. Pro. § 377.60(a). For purposes of § 377.60(a), Plaintiff would have to establish the absence of surviving issue and standing through the intestate succession statute. See id. For purposes of intestate succession, parents may recover as heirs if there is no issue of the decedent. See Cal. Prob. Code § 6402(b); Chavez, 91 Cal.App.4th at 1438. If Leisa Kelly had no other issue, then Candy Kelly has standing to bring a wrongful death cause of action.[3] See Cal. Code Civ. Pro. § 377.60(a); Cal. Prob. Code § 6402(b); Chavez, 91 Cal.App.4th at 1438.

In addition to alleging that she is Leisa's mother, Plaintiff expressly alleges that she is the heir of Leisa. See Plaintiff's Complaint at ¶ 23. Besides a general objection, Defendant's response to the declaration focuses exclusively on Ryan; there is no response to Plaintiff's declaration that Leisa had no surviving spouse or issue. The Court has the discretion to allow Plaintiff's declaration in order to supplement the allegation that Plaintiff is Leisa's heir. See Warth, 422 U.S. at 501-02; Clinton, 112 F.Supp.2d at 32-34; Unocal, Inc., 176 F.R.D. at 337-38; Reese, 930 F.Supp. at 1539-40; Moore, 893 F.Supp. at 1531 n.9. The allegations in the complaint, the supplemental declaration filed by Plaintiff, and Defendant's response thereto show that there is really no dispute as to the standing of Plaintiff regarding Leisa. The general allegation that Plaintiff is the heir of Leisa, considered with the more specific information provided in the supplemental declaration, is more than sufficient to establish Plaintiff's standing under § 377.60 for purposes of this motion. Defendant's motion is denied.

**b. Standing For The Alleged Wrongful Death Of Ryan Kelly**

Grandparents are not the "surviving spouse, domestic partner, children, [or] issue of

[3] Irrespective of § 377.60(a) and the law of intestate succession, if Plaintiff was dependent upon Leisa, then Plaintiff would have standing under § 377.60(b). See Cal. Code Civ. Pro. § 377.60(b).

deceased children." See Cal. Code Civ. Pro. § 377.60(a). For purposes of § 377.60(a), Plaintiff would have to establish the absence of surviving issue and standing through the intestate succession statute. See id. For purposes of intestate succession, grandparents may recover as heirs if there is no issue of the decedent, no surviving parents of the decedent, and no surviving issue of the decedent's parents. See Cal. Prob. Code § 6402(d).

The complaint expressly alleges that Plaintiff is the heir of Ryan, but has no specific allegations concerning the existence of any spouse, issue, surviving parents, or issue of parents of Ryan Kelly. Plaintiff's supplemental declaration states that the identity and whereabouts of Ryan's father is unknown. The parties have not adequately briefed the issue of the proper course when the identity of a parent is unknown. However, for a parent to recover through the intestate succession provision of California Code of Civil Procedure § 377.60 for the wrongful death of a child who was born out of wedlock, the parent must have (1) acknowledged the child and (2) contributed to the support or the care of the child. See Lozano v. Scalier, 51 Cal.App.4th 843, 846-49 (1996) (interpreting California Code of Civil Procedure § 377.60 and California Probate Code § 6452). If the identity of Ryan's father is unknown, it is unlikely that Ryan's father acknowledged Ryan or contributed to Ryan's support and care. Cf. Reese, 930 F.Supp. at 1540 (holding that plaintiff had standing under Georgia law for the death of a child where, *inter alia*, the identity of the father was unknown). Given these considerations, the Court will not dismiss Plaintiff's claim for the death of Ryan. However, the burden of establishing standing remains on Plaintiff throughout this case, see Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992), and further briefing and factual development may compel a different result at a later stage. For now, Defendant's motion to dismiss is denied.

**2. Improper Venue**

*Defendant's Arument*

Defendant argues that this Court in *Kelly 1* determined that venue was not appropriate in

the Eastern District of California. However, Plaintiff refiled in Calaveras County, which is in the Eastern District. As was the case before, the only events alleged to have occurred in the Eastern District of California are: (1) accessing a computer website; (2) delivery of the drugs to the decedents; and (3) the suicides. However, the claim being made against Defendant is negligence, but each of the Defendant's actions occurred outside the Eastern District of California. From the complaint in *Kelly 1*, Echols and Chapman, citizens of North Carolina, reviewed and approved the request for Elavil on behalf of a Nevada corporation doing business in Florida (RX Medical). RX Medical approved the order and forwarded a prescription to EZ RX, a business located in New Jersey. EZ RX then shipped the Elavil to Leisa and Ryan. Qualitest does its business in Alabama and is alleged to have failed to supervise the New Jersey, Florida, and North Carolina activities from its location in Alabama. The events and omissions giving rise to the claim occurred outside of this district and venue is improper.

*Plaintiffs' Opposition*

Citing 29 U.S.C. § 185(a), (c), Plaintiff argues that venue is proper in any district in which "a substantial part of the events or omissions giving rise to the claim occurred." Here, the decedents both died within the district, the decedents accessed a website in this district, the decedents "accessed a website belonging to defendants," the decedents filled out and e-mailed the questionnaire from this district, the Elavil was mailed to this district, all subsequent investigations of the suicide occurred in this district, and a majority of the witnesses reside in California.

Further, Plaintiff argues that the California long arm statute authorizes jurisdiction to the full limits of the Constitution. Plaintiff argues that Qualitest markets its product in virtually every drug store in California and that it directly conducted business with RX Medical, which is headquartered in California. Further, Defendant sold its products to an internet pharmacy, it is well known that internet pharmacies sell their products interstate. Plaintiff argues that Qualitest purposefully avails itself of the privilege of conducting business in California and therefore,

reasonably subjects itself to the jurisdiction of California. Plaintiff argues that Qualitest does extensive business in California and has purposefully availed itself of the economic benefits of California and jurisdiction over Qualitest is appropriate.

*Reply*

Defendant argues that Plaintiff is misstating facts. There are no allegations in the complaint, nor has Plaintiff provided any evidence, that Defendant markets its products in "virtually every drug store in California." Further, Defendant did not do business directly with RX Medical, rather, as alleged in the complaint, Defendant sold Elavil to EZ RX. Further, Plaintiff has pled no facts that indicate that it is subject to jurisdiction in California based on extensive business dealings. Plaintiff has not shown that venue is proper in this district.

*Rule of Civil Procedure 12(b)(3)*

Federal Rule of Civil Procedure 12(b)(3) allows a defendant to move for dismissal on the basis of improper venue. See Fed. R. Civ. P. 12(b)(3); Abrams Shell v. Shell Oil Co., 165 F.Supp.2d 1096, 1102 (C.D. Cal. 2001). The plaintiff bears the burden of showing that venue is proper in the chosen district.[4] Koresko v. Realnetworks, Inc., 291 F.Supp.2d 1157, 1160 (E.D. Cal. 2003); McCaskey v. Continental Airlines, Inc., 133 F.Supp.2d 514, 523 (S.D. Tex. 2001); American Homecare Fed'n v. Paragon Sci. Corp., 27 F.Supp.2d 109, 112 (D. Conn. 1998); Delta Air Lines, Inc. v. Western Conference of Teamsters, 722 F.Supp. 725, 727 (N.D. Ga. 1989); see also Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir.1979) (holding that plaintiff bears the burden to show proper venue in context of summary judgment). Unlike a motion to dismiss for failure to state a claim under Rule 12(b)(6), the pleadings need not be accepted as true and the court may consider supplemental written materials and consider facts outside of the pleadings in deciding the Rule 12(b)(3) motion. Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1337 (9th Cir. 2004); Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th

---

[4] Some courts hold that the burden rests with the defense. E.g., Myers v. American Dental Ass'n, 695 F.2d 812, 816 (3d Cir. 1982).

Cir. 1996) (holding that "the pleadings are not accepted as true" and that "facts outside of the pleadings" may be considered in a 12(b)(3) motion); Walker v. Carnival Cruise Lines, 107 F.Supp.2d 1135, 1137 n.2 (N.D. Cal. 2000) (noting that in resolving previous 12(b)(3) motion, "the Court did not assume the truth of the pleadings and considered facts not contained therein."). Accordingly, "venue issues [ordinarily] are resolved on affidavits and declarations." Schwarzer, Tashima & Wagstaffe, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 4:254 at 4-70 (The Rutter Group 2004); e.g., Murphy, 362 F.3d at 1140-43 (deciding venue issue through allegations made in affidavits/declarations). If genuine contested factual issues are presented, the court is obligated to draw all reasonable inferences and resolve the factual conflicts in favor of the non-moving party. Murphy, 362 F.3d at 1138-1140 (explaining in part that although "it was error not accept Murphy's version of the facts, and all reasonable inferences thereon, we will examine whether Murphy presented sufficient evidence to survive Schneider's Rule 12(b)(3) motion under the standard we have announced"). Alternatively, the district court may hold a pre-trial evidentiary hearing on the disputed facts or may deny the motion with leave to re-file if further development of the record would eliminate any genuine factual issues. Id. at 1139.

Where venue is improper, the district court has the discretion to dismiss the case under Rule 12(b)(3) or transfer the case in the interests of justice to an appropriate jurisdiction under 28 U.S.C. § 1406(a). See Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993); King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992); Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1212 (D. Haw. 2002); Citizens For A Better Environment v. Union Oil Co., 861 F.Supp. 889, 897 (N.D. Cal. 1994). In determining whether to transfer or dismiss a case, the court may consider: the applicable statute of limitations, the relative injustice imposed on the parties, whether the suit was filed in bad faith or for harassment, whether the plaintiff has requested or shown an interest in a transfer, and whether the chosen venue was clearly or obviously improper. See Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1201-02 (4th Cir. 1993); King, 963 F.2d at 1304-05; Johnson v. Payless Drug Stores Northwest, Inc., 950 F.2d 586, 588

(9th Cir. 1992); Wood v. Santa Barbara Chamber of Commerce, 705 F.2d 1515, 1523 (9th Cir. 1983). "A determination of improper venue does not go to the merits of the case and therefore must be without prejudice." See In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802, 804 (9th Cir. 1991); Schwarzer, Tashima, Cal. Prac. Guide: Fed. Civ. Pro. Before Trial ¶ 9:145.1 at 9-40.

*28 U.S.C. § 1391 – Venue In Diversity Cases*

In relevant part, 28 U.S.C. § 1391 reads:

> (a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.
> . . . . . . . . . . .
> (c) For purposes of venue under this chapter [28 USCS §§ 1391 et seq.], a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

28 U.S.C. § 1391(a), (c).

Under this statute, "it is possible for venue to be proper in more than one judicial district." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). Under 28 U.S.C. § 1391(a)(2), it is not necessary that a majority of the events occurred in the district where suit is filed, that the events in that district predominate, or that the chosen district is the "best venue," rather plaintiffs must show that a "substantial part" of the events giving rise to their claims occurred in the chosen district. See Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003); First of Mich. Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998); Bates v. C & S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992); Rodriguez v. California Highway Patrol, 89 F.Supp.2d 1131, 1136 (N.D. Cal. 2000). In other words, "significant events or omissions material to the

plaintiff's claim must have occurred in the district in question." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005) (citing Jenkins Brick Co. v. Brick, 321 F.3d 1366, 1372 (11th Cir. 2003) and Cottman Transmission, 36 F.3d at 294)); see also Engel v. CBS, Inc., 886 F.Supp. 728, 732 (C.D. Cal. 1995). In determining whether events or omissions are sufficiently substantial to support venue under § 1391(a)(2), the court should review the entire sequence of events underlying the claim. Mitrano, 377 F.3d at 405; Bramlet, 141 F.3d at 264; Cottman Transmission, 36 F.3d at 294. However, because venue is a privilege of the defendant,[5] and venue must be appropriate as to each defendant,[6] the court should generally focus on activities of the defendant and not the activities of plaintiff. Jenkins Brick, 321 F.3d at 1371-72; Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995); Gaines, Enhof, Metzler & Kriner v. Nisberg, 843 F.Supp. 851, 854 (W.D. N.Y. 1994); 17 Moore's Federal Practice, § 110.04[1] (3d ed.). Events or omissions that might only have some tangential connection with, or no real relationship to, the claims in litigation are not sufficiently "substantial" to support venue. See Gulf Ins., 417 F.3d at 357; Cottman Transmission, 36 F.3d at 293-94; see also Engel, 886 F.Supp. at 732. In a tort action, the locus of the injury or harm suffered by plaintiffs is a relevant factor in determining venue under § 1391(a)(2). Myers v. Bennett Law Offices, 238 F.3d 1068, 1075-76 (9th Cir. 2001); Miracle v. N.Y.P. Holdings, Inc., 87 F.Supp.2d 1060, 1072-73 (D. Haw. 2000).

*Discussion*

The complaint in this case identifies Defendant as an Alabama corporation. See Plaintiff's Complaint at ¶ 2. The complaint does not mention Everret Echols or Tom Chapman nor does it indicate where EZ RX or RX Medical conduct business. However, this Court has granted Defendant's motion to take judicial notice of the original complaint in *Kelly 1*. In the *Kelly 1* complaint, Echols and Chapman are alleged to reside in North Carolina, see Request For

---

[5]See Cottman Transmission, 36 F.3d at 296.

[6]See Bearse v. Main St. Inv., 170 F.Supp.2d 107, 116 (D. Mass. 2001); McCaskey, 133 F.Supp.2d at 523; Hickey v. St. Martins Press, 978 F.Supp. 230, 240-41 (D. Md. 1997).

Judicial Notice Exhibit A at ¶¶ 3-4, RX Medical is alleged to be a Nevada Corporation doing business in Florida,[7] see id. at ¶ 6, and EZ RX is alleged to be a business entity actively doing business in New Jersey, with its principal place of business in Union City, New Jersey. See id. at ¶ 5.

Further, the complaint in this case does not identify which statute provides for venue. The opposition lists 29 U.S.C. § 185(a), (c). This provision, however, sets venue for "suits by and against labor organizations;" it is inapplicable to this case. Instead, the Court assumes that Plaintiff is relying on 28 U.S.C. § 1391(a), (c), which sets venue for diversity cases, such as this.

Plaintiff has filed no additional affidavits, declarations, or evidence of any kind in specific opposition to Defendant's Rule 12(b)(3) motion. The claim made against Defendant is that it was negligent in the sales and distribution of Elavil in that it approved sales of Elavil to "rogue" on-line pharmacies without conducting a reasonable investigation into the practices, licensure, and insurance status of the pharmacies. Plaintiff's Complaint at ¶¶ 19-20. Thus, the claim against Defendant is negligent sale of Elavil to an improperly licensed pharmacy, EZ RX.

Plaintiff relied on 28 U.S.C. § 1391(a)(2) for venue in *Kelly 1*, and the arguments made are very similar to the arguments made in this case. Given the lack of new evidence and the similarity of allegations in this case and in *Kelly 1*, the Court believes that the same 28 U.S.C. § 1391(a)(2) venue analysis is applicable to both complaints. In resolving whether a "substantial portion of the events" giving rise to Plaintiff's negligence claim occurred in the Eastern District of California, this Court explained in *Kelly 1*:

> . . . EZ RX is alleged to be a New Jersey on-line pharmacy. The sale of Elavil, thus would have been from an Alabama corporation (Qualitest) to a New Jersey corporation. Even if EZ RX is not properly licensed in New Jersey, the improper or negligent sale of Elavil by Qualitest would appear to involve conduct occurring in either Alabama or New Jersey. By way of example only, given the apparent agreement of the parties concerning the location of Qualitest and EZ RX, presumably sales negotiations and research into the licensure/qualifications of EZ

---

[7]In opposition, Plaintiff states that RX Medical is headquartered in California. However, there are no allegations regarding the headquarters of RX Medical in the complaint, and, as discussed above, the *Kelly 1* complaint does not suggest a California headquarters.

> RX occurred in either Alabama or New Jersey or both. Plaintiffs have not presented any evidence of conduct by, or relating to, Qualitest that is material to their claims of negligence against Qualitest.
>
> The only identified conduct in Plaintiffs's opposition that clearly occurred in the Eastern District of California is accessing a website that was operated by a co-defendant [i.e. not Qualitest], the shipping of the Elavil to the decedents by a co-defendant [i.e. not Qualitest], and the suicides of the decedents. Assuming *arguendo* that these assertions are true, accessing a website/ordering Elavil on-line from co-defendants [i.e. not Qualitest] in this District is an act by the decedents and arguably co-defendants, but it does not relate to Qualitest. Qualitest is not a party to the transaction, and accessing a website is not material to the claim that Qualitest negligently sold Elavil to an unlicensed pharmacy. Similarly, shipping Elavil into the Eastern District of California is conduct by either EZ RX (a New Jersey on-line pharmacy) or RX Medical (a Nevada company doing business in Florida). The shipping or delivery of Elavil to decedents is not conduct by Qualitest and does not involve the negligent sale of Elavil by Qualitest to an unlicensed pharmacy. Finally, it appears that the injury/suicides did occur in this district. However, again assuming *arguendo* that Plaintiffs' allegations are true, the deaths of Leisa and Ryan Kelly appear to have been self-induced, and Leisa and Ryan appear to have obtained the Elavil through RX Medical and EZ RX after Leisa and Ryan's order was reviewed, and a prescription was issued, by Chapman and/or Echols (residents of North Carolina). The prescription itself was filled by EZ RX. It does not appear that Qualitest was a party to the on-line transaction, rather, the only apparent role that Qualitest played was manufacturing Elavil. Although the locus of a tort injury is relevant in determining "substantiality," "a substantial portion of the events or omissions giving rise to the claim" must have occurred in the Plaintiffs's chosen district. <u>See</u> 28 U.S.C. § 1391(a)(2). The allegations do not indicate that a "substantial part" of the events or omissions giving rise to Plaintiffs's claim against Qualitest occurred in the Eastern District of California.

Defendant's Motion for Judicial Notice Exhibit B at p. 20-22. The Court adopts this analysis for this case.

Plaintiff also seems to rely on 28 U.S.C. § 1391(a)(1), (3) in her opposition and argues that Defendant conducts extensive economic activity in California which subjects it to California jurisdiction. However, as Defendant correctly points out, there are no allegations in the complaint that would support personal jurisdiction over Defendant (an Alabama corporation who allegedly sold Elavil to EZ RX, a New Jersey corporation) in the Eastern District of California based on extensive economic conduct. Plaintiff presents no evidence that supports venue through 28 U.S.C. § 1391(a)(1) or (a)(3) but instead relies on assertions made in her opposition. The complaints show that the chain of events from Defendant in Alabama to the decedents in

California is very attenuated, and there is no showing that there is no district where this suit may otherwise be brought. See 28 U.S.C. § 1391(a), (c).

The burden was on Plaintiff to show that venue was proper in this District. See Koresko, 291 F.Supp.2d at 1160; McCaskey, 133 F.Supp.2d at 523; American Homecare Fed'n, 27 F.Supp.2d at 112. Plaintiff has submitted no evidence in support of her assertion that venue is appropriate in this Court, and there are no allegations or evidence that supports her argument that venue in this District is proper through 28 U.S.C. § 1391(a). Instead, the allegations indicate attenuated conduct by Defendant that occurred in Alabama that, at best, was directed towards entities in New Jersey. Plaintiff has failed to meet her burden of showing that venue is proper in the Eastern District of California.

Since Plaintiff has failed to meet her burden, the Court has the discretion to dismiss this suit or transfer it to a venue that is appropriate under 28 U.S.C. § 1406. See Minnette, 997 F.2d at 1026; King, 963 F.2d at 1304; Kawamoto, 225 F.Supp.2d at 1212; Union Oil Co., 861 F.Supp. at 897. From the complaint, Leisa and Ryan ordered and received Elavil, and later committed suicide, all in late January 2004. The statute of limitations for California's wrongful death statute is two years. Cal. Code Civ. Pro. § 335.1. Since this is August 2006, it would appear that the statute of limitations has run. Also, the complaint alleges that Defendant is an Alabama corporation whose principal place of business is Huntsville, Alabama. Defendant does not dispute that it is an Alabama corporation headquartered in Huntsville, and, as part of its motion to dismiss for failure to state a claim, relies on an Alabama statute regarding distribution of prescription drugs. See Defendant's Motion to Dismiss at 9. Further, the complaint indicates that Defendant's conduct (improper sale and investigation) took place in Alabama and, in moving to dismiss Plaintiff's claim for emotional distress, Defendant states, "Qualitest's conduct occurred in Alabama." Id. at 13. Plaintiff has not argued for a transfer of the case to another court, but instead has simply argued that venue is appropriate in this district. Although Plaintiff has not requested a transfer, it is apparent that Plaintiff wishes to pursue her claims against

Defendant since she refiled this case in this District after this Court previously dismissed it. Considering the statute of limitations problem, that Plaintiff filed this second suit against Defendant after being dismissed, that Defendant is an Alabama corporation,[8] and that the complaint and moving papers indicate that Defendant's conduct took place in Alabama, the Court will transfer this case to the Northern District of Alabama, Northeastern Division.[9]

**CONCLUSION**

Defendant Qualitest has brought motions to dismiss for failure to state a claim, lack of standing, and improper venue.

With respect to standing, the Court has the discretion to consider supplemental affidavits that provide more particularity to the allegations. Here, the complaint alleges that Plaintiff is the heir of both Leisa and Ryan. Plaintiff's supplemental declaration indicates that Leisa had no surviving spouse or issue, that Ryan had no surviving spouse or issue, and that the whereabouts and identity of Ryan's father is unknown. Given the allegation in the complaint and the further particular allegations in Plaintiff's declaration, Plaintiff has standing to bring suit for Leisa's death. With respect to Ryan, although the issue is inadequately briefed, Plaintiff's declaration and case law (*Lozano*) suggests that Ryan's unidentified father could not inherit through intestate succession, and thus, could not sue for the wrongful death of Ryan. At this stage, the Court will deny Defendant's motion to dismiss for want of standing.

With respect to Defendant's 12(b)(3) motion, Plaintiff bears the burden of establishing that venue is proper. Here, Plaintiff submitted no declarations, affidavits, or other evidence, but

---

[8]The website for the Alabama Secretary of State indicates that Qualitest Pharmaceuticals, Inc. is an active corporation that incorporated in Madison County Alabama in June 1986. See http://arc-sos.state.al.us/CGI/SOSCRP10.mbr/output?PGM=1&P01=111203M. This Court may take judicial notice of public records, including records of state entities. See Fed. R. Evid. 201; Wilbur v. Locke, 423 F.3d 1101, 1112 (9th Cir. 2006).

[9]The website for the Northern District of Alabama indicates that the Northeastern Division embraces Huntsville. See http://www.alnd.uscourts.gov/Local/Alabama_Northern_District_Divisions_and_Counties.pdf.

instead relied on argument. Plaintiff has failed to meet her burden and has not shown that venue in the Eastern District of California is appropriate. Although Plaintiff has not requested a transfer, Plaintiff would have a statute of limitations problem if she refiled in another court, Plaintiff clearly wishes to pursue claims against Defendant, and Defendant's conduct is alleged to have occurred in Alabama, where it is incorporated. Accordingly, the Court will transfer this case under 28 U.S.C. §1406(a) to the Northern District of Alabama, Northeastern Division.

Given the resolution of Defendant's 12(b)(3) motion, the Court will not address Defendant's 12(b)(6) and 12(f) arguments.

Accordingly, IT IS HEREBY ORDER that:

1. Defendant's motion to dismiss for lack of standing is DENIED;
2. Defendant's 12(b)(3) motion to dismiss for improper venue is GRANTED and this case is TRANSFERRED to the Federal Northern District of Alabama, Northeastern Division; and
3. Defendant's 12(b)(6) and 12(f) motions are DENIED without prejudice.

IT IS SO ORDERED.

**Dated: August 28, 2006** **/s/ Anthony W. Ishii**
0m8i78 UNITED STATES DISTRICT JUDGE